I concur with the majority's decision to affirm the trial court's denial of the custody modification petitions. I must respectfully dissent, however, from the majority's affirmance of the award of a $6000 attorney fee to the wife.
The majority lists the following factors to be considered by the trial court in awarding attorney fees: (1) the financial circumstances of the parties; (2) the parties' conduct; (3) the results of the litigation; and (4) where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney. See Figures v. Figures,624 So.2d 188, 191 (Ala.Civ.App. *Page 179 
1993). See generally Annot., 57 A.L.R.4th 710 (1987). In my opinion, only the fourth factor could support the fee awarded in this case.
The evidence presented at trial established that the father's annual income is half the mother's. The father is self-employed in the automobile accessory business. He pays his bills directly out of his business account, and he lives with his parents. He has no expenses for housing or utilities. He draws approximately $10,000 in salary per year. The mother, an English professor at a junior college, earns approximately $20,000 per year. She has recently remarried and bought a home with her new husband.
Although the father's $10,000 annual salary may not reflect his real income, there was no testimony presented at trial to indicate what his real income is. Like the trial court, this court is bound by the evidence presented at trial and contained in the record. Bell v. Bell, 443 So.2d 1258, 1262
(Ala.Civ.App. 1983). Based on the evidence before the trial court as to the respective financial situations of the parties, I believe the award of a $6000 fee to the wife was excessive.
An examination of the second factor (the parties' conduct) also leads to the conclusion that the attorney fee award was unwarranted or excessive. Although the trial court had discretion to award an attorney fee to the mother without finding the father in contempt, see Ayers v. Ayers,643 So.2d 1375 (Ala.Civ.App. 1994), it is relevant that the father's conduct did not amount to contempt and that it was, in fact, not the trigger for the instant litigation.
Viewing the conduct of both parties in perspective, it is clear that the mother's actions precipitated the litigation. The parties had joint custody of their three-year-old son, yet the mother unilaterally withdrew the child from one day-care facility and placed him in another without consulting the father. The withdrawal of the child from day-care occurred shortly after the father sought help from the police department to identify the person who had mailed him obscene materials. The father suspected the mother and, at his instance, she was questioned and finger-printed by the police.
When the father refused to pay the expenses of the new day-care facility, the mother filed a contempt petition. The father then sought a modification of the divorce decree, asking for full custody. The mother then counter-petitioned for full custody, and what had begun as a dispute over day-care developed into a full-blown and rather nasty custody battle.
An analysis of the third factor (the results of the litigation) dictates that neither party should have been awarded attorneys' fees. The trial judge declined to find the father in contempt and declined to modify the original joint custody order. That result indicates, first, that the trial court did not find the father wholly unjustified in failing to pay child-care expenses, and second, that the father failed to meet the stringent McLendon standard — not that the father was an unfit parent.